**MORROW, Plaintiff-Appellant v. CLEVELAND (City), Defendant-Appellee.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 19419.   Decided November 8, 1943.

Malvern Schultz, Cleveland, for plaintiff-appellant.
T. J. Burke, law director, Cleveland and J. W. McSweeney, assistant, Cleveland, for defendant-appellee.

## OPINION

By SKEEL, J.

The appellant comes to this court upon appeal on questions of law from a ruling of the Common Pleas Court. The

trial court sustained defendant's demurrer to plaintiff's petition and thereafter, the plaintiff not desiring to plead further, final judgment for the defendant was entered.

The plaintiff's petition in substance alleged that he brings the action as a taxpayer, being the owner of real estate within the boundaries of the City of Cleveland, a municipal corporation legally organized under the Constitution and laws of the State of Ohio. It is alleged that the City of Cleveland is governed by a Charter adopted by a vote of the people in 1931. By the terms of the Charter of 1931 the legislative branch of the city government is vested in a Council. The Charter provides that the members of the Council are to be elected from the wards, each ward electing one councilman.

It is alleged that the Charter of 1931 provided that the city should be divided into wards on the basis of one ward for each 30,000 inhabitants and that to determine number and location of the several wards, the total population as shown by the Federal census of 1930 should be divided by 30,000, the result being the number of wards. It then provides that the City Council shall proceed to divide the city by natural boundaries into the proper number of wards so that each will have as near as practicable a population of 30,000. That no such wards have been thus established. That the census of 1940 shows the population of the City of Cleveland to be 878,336 which when divided by 30,000, the number of inhabitants which the Charter provides as the basis for determining the number of wards, would entitle the city to 29 wards and therefore a Council of 29 members.

It is alleged by the plaintiff that the provisions of the Charter relating to the method of dividing the city into wards has been violated; that the city has never been divided into wards; that 33 councilmen have been illegally elected and are serving the city unlawfully and without warrant of authority; that the city is paying $3000.00 per year to each of the Councilmen except the president of the Council who is receiving $5000.00 per year. The petition further alleges that all other functions of the legislative branch of the city government are in jeopardy because the Council which seeks to perform the duties imposed upon it by law is an illegal body and therefore devoid of lawful authority. The plaintiff alleges that the Director of Law was requested to bring this action but that such request was refused. The plaintiff then asks that the defendants be enjoined from the payment of the salaries of the alleged councilmen.

The defendant filed a demurrer to the plaintiff's petition on two grounds:

1. That the court is without jurisdiction of the subject matter of the action.

2. That the petition does not state facts sufficient to constitute a cause of action.

Before considering the sufficiency of the allegations of the petition to constitute a cause of action, it will be necessary to consider to what extent the court must assume as true the allegations therein contained. In the first place, the court should disregard all legal conclusions pleaded. The petition alleges that "33 Councilmen were illegally elected to the City Council." Such an allegation is a legal conclusion, and therefore cannot be considered as admitted by the defendant's demurrer.

It is equally true that the court will disregard allegations which are in direct conflict with facts of which the court takes judicial notice.

In Jones Commentaries on Evidence, 2nd Edition, page 647, par. 370, the rule is stated as follows:

"Facts judicially noticed are not ordinarily required to be pleaded, and if pleaded matter conflicts with the judicial knowledge of the court it plainly follows that the latter control * * *."

"A majestic, though somewhat hazy background to the entire field of evidence, the doctrine stands as a collection of of facts, the truth of which, once the application of the doctrine is determined may be sought by reference to such sources as the court deems fit and proper, but which are in the last analysis, ultimate and predominant truths, uncontrollable by litigants or by authorities brought forward to refresh the memory of the court."

In considering the effect of judicial notice in "aid of or combating a general demurrer" the same author on pages 839, 840 and 841, says:

"There is an apparent conflict on the question of whether on general demurrer, judicial notice of facts opposed to the averments of the pleadings demurrer to can be used."

The author then cites and comments on People v Oakland Waterfront Company, 118 Cal. 234 and, Griffing v Gibb, 2 Black (U. S.) 519 and concludes in par. 476 that:

"From the authorities cited and quoted in the preceding section, we are forced to the conclusion that a demurrer is not aided by facts of which the court might be required to take

judicial notice upon trial of the cause to the extent of requiring the court to find against direct averments admitted by the demurrer. When it is remembered that judicial notice may always be combated by evidence from the opponent when invoked by a party litigant, it appeals persuasively that the result of a trial should not be anticipated on demurrer. **True it is that there can be no combat as to the court taking judicial notice of laws of the jurisdiction** and the apparently conflicting cases may well be reconciled by considering that the judge must exercise such knowledge of the laws of his jurisdiction as may be necessary in dealing with a demurrer. But where, in order to defeat a claim, it would be necessary to take notice of facts not alleged, wholly extraneous to what has been presented to the court in formal mode, there is, at least no compulsory notice of such facts."

In the case of French et v Senate of the State of California, 146 Cal. 604, the court had this identical question for consideration. The action was in mandamus seeking to compel the Senate of the State of California to admit the petitioners to the privilege of the office of Senator to which they had each been elected. The petitioners had been expelled by a vote of the Senate for malfeasance in office, after charges had been filed against them in which it was alleged that they had taken bribes for the purpose of influencing their conduct as Senators. The petition alleged that they had not been given a hearing nor afforded a trial, nor permitted to make a defense and that the charges were false. The official proceedings of the Senate showed that charges had been preferred, that a sub-committee had made a full investigation and report thereon and that petitioners had been given notice of the proceedings and allowed to participate therein. The Senate demurred to the petition. The court, in sustaining the demurrer, on the ground that it did not have jurisdiction, in the fourth and fifth paragraphs of the syllabus said:

"Allegations of the petition made contrary to facts judicially noticed by the court are not admitted by the demurrer."

"The court takes judicial notice of the proceedings held in the Senate and entered upon its journal by which petitioners were expelled, showing that charges were preferred against them and referred to a committee for investigation, which, after investigation, reported to the Senate, finding that the charges were true, and recommending expulsion which report was acted upon by the Senate. In the absence of a con-

trary allegation it must be presumed that petitioners had notice of these proceedings and were allowed to participate therein."

In Ruling Case Law, Volume 15, page 1062, Sec. 5 the rule is stated as follows:

"Since judicial notice is not generally dependent on the pleadings, it has been held that matters properly subject thereto are not affected by a demurrer. In such case the demurrer is not taken to admit anything that is contrary to the judicial knowledge of the court."

In the instant case the subject of the plaintiff's action is founded upon the provisions of the Charter of the City of Cleveland which Charter was adopted by a vote of the people at the November election of 1931. Is the fact of the adoption of such Charter and its provisions a subject of which the Common Pleas Court may take judicial notice? Almost without exception, except where a state statute requires it, courts of general jurisdiction do not take judicial notice of Municipal Ordinances. Jones' Commentaries on Evidence, 2nd Edition, p. 702, Sec. 406, **17 O. Jur. p. 51, Sec. 26.** Is there any distinction to be found between ordinances passed by a City Council and a Charter which under **Sections 3 and 7 of Art. XVIII of the Constitution of Ohio** can only become effective when adopted by a vote of the people?

Jones' Commentaries on Evidence, 2nd Edition, page 699, Sec. 399, in presenting the question as to whether or not a court of general jurisdiction will take judicial notice of Municipal Charters, said:

"There is practically a concensus of opinion that judicial notice should be taken of the acts incorporating municipalities, for the reason that acts incorporating cities, villages and other municipal corporations may be regarded as inherently public, or, if local in their general character, as containing certain provisions which may affect the general public. Whatever may be the grounds of the rule, the courts have generally taken judicial notice of such acts, whether declared to be public or not.

By the great weight of authority, it is accordingly held that neither the corporate existence nor the charter powers of such bodies need be alleged or proved. * * *"

It must be remembered that the right of an Ohio city to adopt a Home Rule Charter is provided for by the Constitu-

tion of the State of Ohio and its adoption can only be accomplished by a vote of the people. In presenting a proposed Charter or an amendment to an existing Charter its provisions are given great notoriety and are the subject of much public discussion. The proponents of such Charter or amendment see to it that the public is fully advised as to its provisions.

In the case of **Stange v City of Cleveland, 25 C. C. (N. S.) 599,** the court had for consideration a prosecution of a contractor for employing his help longer than eight hours a day upon public work when there was no emergency requiring longer hours. The power of the city to regulate by ordinance the hours of work on public projects when the State had already passed statutes to govern this question was challenged. The court in passing on this question said, on page 601 of the opinion:

"The court will take judicial notice that on July 1, 1913, in pursuance of the authority given by the latter section (Section 6, Article XVIII of the Constitution of Ohio) the City of Cleveland by a vote of the people adopted a Charter for its government. Section 196 of this Charter provides as follows: * * * (then follows a copy of the section regulating the hours of labor on public work)."

It might be well to note here that the plaintiff's brief and reply refer frequently to the history of the Cleveland Charter, its amendments and some of the provisions thereof, when they are not set forth either in his pleading or the record. He must have concluded, therefore, that such matters are the subject of judicial notice.

The plaintiff's petition alleges that the Charter of 1931 "requires the City of Cleveland to be divided into wards upon the basis of one ward for each thirty thousand inhabitants, or major portion thereof, as determined by the Federal census taken in the year 1930 and every tenth year thereafter."

The Charter provision on this subject is Section 25. It does not refer to the census of 1930. It in part provides:

"Immediately after the proclamation by the Secretary of State, stating the population of the cities of Ohio as determinated by the Federal census decennially taken the Council shall re-divide the city into wards upon the basis of one ward for each thirty thousand population or major portion thereof * * *."

The next decennial census after the adoption of this Charter was in 1940.

As was indicated before, the Charter provided that the members of Council elected at the election of 1931 should serve out their terms so that the first election of councilmen under the Charter of 1931 did not take place until the Municipal elections in the Fall of 1933.

Prior to the adoption of the Charter of 1914, the city was divided into 26 wards by an ordinance of the Council acting under the authority of §4212 GC. Sec. 28 of the Charter of 1914 provided that the wards as defined prior to the adoption of the Charter should continue until the next census. In 1921 the census of 1920 having shown the population to be 796,841 the city was then divided into 32 wards which were increased to 33 wards when West Park was annexed. The people of Cleveland adopted the Manager Plan of government in 1921, which provided for a Council of 25 to be elected from four districts. These districts were defined in the Charter. But the Charter of 1921 did not have the effect of disturbing the wards as previously defined, except that they no longer were the basis upon which membership in the City Council was to be determined. It is a matter of common knowledge that ward organizations retained their identity and continued as integral parts of our major political parties as provided by law and that the wards as created under the authority of the Charter of 1914, after the census of 1920, were used in the conduct of all elections, local, state and national, except for that of councilmanic candidates. So that when the people adopted Section 25 as a part of the Charter of 1931, which contained the following sentence,

"the division of the city into wards existing at the time of the adoption of this amendment shall continue until changed as provided herein"

they intended to re-establish the war boundaries as created under the Charter of 1914 and (defined by ordinance passed as to 32 wards in 1921) as to the 33rd ward in 1922, as the basis for the election of councilmen until such time as the wards were changed by the Council in the manner provided in Section 25 after the next proclamation of the Secretary of State of the population in Cleveland determined by the 1940 census.

Taking into consideration, therefore, only those allegations that are well pleaded and not in direct conflict with facts of which the court takes judicial notice, the petition does not state sufficient facts to constitute a cause of action.

It remains to consider whether or not the court has jurisdiction of the plaintiff's complaint in the form in which it is

■ presented in plaintiff's petition. The action as stated above, is one seeking to enjoin the payment of the salaries of the thirty-three councilmen elected to office by the voters at the regular municipal election, held according to law in November, 1941. The sole basis upon which plaintiff seeks to enjoin the payment of salaries is because of the failure of the Council to carry out the provisions of Section 25 of the Charter of the City of Cleveland to **redivide** the city into wards so that each ward would have a population of about 30,000 persons, after the proclamation of the Secretary of State stating the population of Cleveland as a result of the census of 1940. It is claimed by the plaintiff that if this had been done it would have reduced the number of wards from thirty-three to twenty-nine. Whether this conclusion is true or not is open to considerable doubt. It might be that the subdividing of the city into wards by the Council in the exercise of its sound discretion, due to the irregularities of the natural and street boundary lines on the basis of 30,000 population, or major portion thereof, "as nearly equal in population as may be, composed of contiguous and compact territory and bounded by natural boundaries or street lines" would result in the creation of thirty or even thirty-one wards. But, regardless of what might be the result, it is contended that the failure of the Council to carry out the provisions of this section, after the census of 1940, has invalidated the offices of all the councilmen in Cleveland. Therefore, it is claimed there being no valid office there cannot be even a de facto officer. Certainly no such result will obtain. The Charter of 1931 declares in Section 25 that the "wards existing at the time of the adoption of this amendment **shall continue** until changed by the Council as provided herein." Having concluded that the wards as they existed prior to the Charter of 1921 and continued to exist thereafter for all other purposes except the election of councilmen, were, by the adoption of the Charter of 1931, reestablished as the basis for the election of councilmen, the legality of the office is thereby determined, and the only way to test the rights of incumbents to the public office which they occupy is by a quo warranto proceeding and not by injunction in equity to enjoin the payment of such officers' salaries or fees.

Under the title, "Proceedings to try Title" in **32 O. Jur. 1083, Sec. 229,** the rule is stated as follows:

"The title of a de facto officer cannot be inquired into in a collateral way between third parties, but may be inquired into where he is suing in his own right as an officer. Every issue,

questioning the authority or rights of an officer, is collateral unless the officer himself is in some way a party to the action. If a de facto officer sues for his salary, the question may be raised by the answer. The only way is to challenge in a quo warranto proceeding." **Molitor v State, 6 C. C. 263.**

The case law not only in Ohio but in all other jurisdictions, almost without exception supports the rule as thus stated. In the case of Green v Knox et, N. Y. 67 N. E. 910, in determining the sufficiency of pleading of a taxpayer seeking to enjoin the payment of the salary of one holding public office where the officer was not a party to the suit, said:

"* * * in our view of the case, the sufficiency of the pleading depends upon the single question whether the title to office, complete and regular on its face, can be tried in a taxpayer's action brought to restrain the payment of salaries. * * *"

We have here, then, three defendants holding regular and presumptively valid appointments in the Civil Service, the payment of whose salaries is sought to be enjoined on the ground that although their appointments are valid in form, they are invalid in fact. * * *

These suggestions, we think, suffice to show the untenability of the claim that the defendants' right to their salaries can be adjudicated without passing upon the question of their titles to office; but even if such a thing were possible, it would be contrary to the orderly and just methods of judicial procedure to relegate public officers first to an equity forum for the determination of their right to salaries, and then to a legal forum for the trial of titles to office, with the incongruous possibility that in the former the court might decide that the payment of salaries should be enjoined and in the latter a jury might affirm the validity of the titles to office upon which the rights to salaries depend. * * * The whole case may therefore be summed up in the statement that whenever there is an actual contest over a title to office that is regular on its face and presumptively valid, the incumbent is entitled to his day in court on the main question before payment of his salary can be interdicted and as a general rule that can only be done properly in the action of quo warranto in a court of law where the issues of fact can be decided by a jury.

Paragraph 2 of the syllabus reads:

"The salary of an officer is property which cannot be taken away until the office is destroyed and when the question of

title to an office is the main question the proper remedy is by quo warranto and not by an action by a taxpayer to restrain payment of the salary."

It is claimed by the plaintiff that the case is also authority for the proposition that if the claimed officer's right to the office is invalid as a matter of law, or if there is no legal office, a suit in equity to enjoy the payment of salary is proper. Whether this be true or not does not affect the instant case. There are no facts properly alleged in the petition that would even colorably be said to present either of these claims.

In the case of Burgess v Davis, County Treasurer et, 28 N E 817, the court, in passing on the use of the injunctive remedy to stop the payment of the salary of a judicial officer who had been elected to office but had thereafter disqualified himself from holding the office, said:

"Equity will not interfere to enjoin the payment of fees, salaries or emoluments to a de facto incumbent of an office. Public policy. 2 High Inj. 3rd Ed. Sec. 1314. The enjoyment of the fees, profits and advantages of the office are so connected with the proper discharge of the duties of the office itself that they cannot be separated therefrom."

See also: Ake v Bockhamer, (Del.), 119 Atl. 238; **Stiess v State, 103 Oh St 33; State ex v Brough, 94 Oh St 115; Babbitt v Shade, 60 O. A. R. 100.**

It is clear, therefore, that the court did not have jurisdiction of the cause of action as presented by the plaintiff and for that reason the plaintiff's petition was properly dismissed.

The problem of procuring the re-districting of the city into wards, under Section 25 of the Charter of 1931, is not one for judicial determination. The duty is one that rests squarely upon the legislative branch of the City Government and in carrying out the mandate of the Charter there is placed upon the Council the duty of exercising its sound judgment and discretion.

For the reasons therefore that the facts which are well pleaded in the petition do not constitute a cause of action and that the court is without jurisdiction to grant the relief asked by the plaintiff, under the circumstances of the case, the judgment of the common pleas court is affirmed.

MORGAN, P. J., concurs in judgment.
LIEGHLEY, J., concurs.